**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF NEW YORK**
-------------------------------------------------------------------x
In re:                                              Chapter 7

Susan Laura Levin,                                  Case No. 8:17-77330-las
                          Debtor.
-------------------------------------------------------------------x

## CREDITOR'S STATUS REPORT AND RENEWED
## REQUEST FOR TERMINATION OF LOSS MITIGATION[1]

Upon information and belief and based upon information furnished by the Creditor, attorney for Creditor, Eastern Savings Bank, fsb ("Eastern") hereby renew its requests for termination of Loss Mitigation on the following Loan:

**Loan Information:**

- Property address: 10 Wagon Lane, East Hampton, New York 11937 (the "Property")
- Creditor's lien priority position: First

**Loss Mitigation Information:**

- Loss Mitigation was requested on: February 1, 2018
- A *"Loss Mitigation Order"*[2] was entered on: February 27, 2018 (the "Order").
- A Loss Mitigation session was attempted on April 12, 2018.

This request for termination of Loss Mitigation is based upon the following *[check all that apply]*:

☒ **Missing Documents:** In accordance with the Order, a document request was sent by the undersigned directly to the Debtor's counsel via email on March 8, 2018, with a response deadline pursuant to the Order of March 22, 2018.

Notwithstanding, the fact that the undersigned specifically followed with counsel to the Debtor for a status on all outstanding documents on March 27, 2018, to which, counsel advised that he was meeting with the Debtor on March 29, 2018 to coordinate, none of the documents demanded have been provided to Eastern, other than the Debtor's last four (4) years of tax returns, which were provided via email on March 19, 2018.

---

[1] Unless otherwise provided herein, all capitalized terms are defined in the Eastern District of New York's Loss Mitigation Program Procedures.

[2] Italicized words in quotations indicate that there is a form by the same name on the Bankruptcy Court's website. These forms shall be used whenever applicable.

1

While a few of the documents requested by Eastern were able to be obtained from Eastern's review of an application filed by the Debtor pursuant to § 522(f) on March 16, 2018 [ECF No. 35] (the "Astilian Application"), neither Eastern, nor the offices of the undersigned have received copies of the documentation requested below. In addition, the Debtor has failed to provide any excuse for the Debtor's delay in providing same. A listing of most, but not all documents requested on March 8, 2018 is as follows:

- Copies of all appraisals and any draft appraisals of the Property.[3]

- The name(s), and address(es), proof of income, and copies of the last two (2) years of filed tax return of any 3rd party who shall seek to assist the Debtor with refinancing her mortgage loan with Eastern.

- Copies of any agreements by and between the Debtor on the one hand, and any broker on the other hand, listing the Property for sale within the last twelve (12) months.

- Evidence of actual amounts due and owing in connection with the following creditors (1) Internal Revenue Service, (2) New York State Department of Taxation, and (3) Alex Astilean.

- Copies of any (i) documents and/or information regarding any copyrights, patents and/or trademarks in the possession of the Debtor or the Debtor's spouse, and (ii) evidence of income and/or royalties generated therefrom to the Debtor or the Debtor's spouse.

- Copies of documents evidencing the Debtor's social security income, pension income, or any other income received by the Debtor, including, but not limited to evidence of income from the Debtor's most recent form of employment;

- Copies of the Debtor's last twelve (12) months of bank statements for any checking and savings accounts she may have had within the last six (6) years;

- A copy of the Debtor's completed Financial Statement, Assets/Liabilities Form, Monthly Income Data Form and Monthly Expenses Form (included in Eastern's submission);

- A copy of the Debtor's completed Description of Hardship Letter (included in Eastern's submission); and

- A copy of the Debtor's Authorization/Certification (included in Eastern's submission).

Of particular concern is the fact that at the contested hearing on the Debtor's application for loss mitigation on February 27, 2018, wherein Debtor's counsel advised the Court, *inter alia*, that information contained in the Debtor's petition and schedules with respect to the Debtor's identification of her obligations (other than Eastern) was inaccurate and overstated to the tune of several hundreds of thousands of dollars (even though the Debtor attested to the veracity of same under penalty of perjury), the Debtor has failed to provide the undersigned with any

---

[3] While an appraisal was included in the Astilian Application, there has been no information provided by the Debtor, responsive to Eastern's request sufficient to assure Eastern that no additional appraisals of the Property exist.

documentation to comprehend what the Debtor knows the true amounts of those aforementioned obligations encumbering the Property to be.

In addition, as of the date hereof, none of the Debtor's schedules have been updated to reflect what the Debtor actually believes her indebtedness to various creditors with liens encumbering the Property to be as explained by counsel to the Debtor at the February 27, 2018 hearing on loss mitigation.

On April 5, 2018, Eastern filed a Status Report and Request for Termination of Loss Mitigation. No status letter has ever been filed by the Debtor since this case is pending.

A Loss Mitigation status conference was held on April 12, 2018 (the "April Conference"). At the April Conference, counsel to the Debtor advised that the Debtor is using loss mitigation to **effectively force a forbearance on Eastern** until she determines how she would like to emerge from bankruptcy (by way of a refinance or sale of her property, she is not presently sure), and that she has no actual intention of working with Eastern to resolve the Debtor's mortgage loan default. Counsel to the Debtor further advised this Court that in light of the foregoing, the Debtor should not be made to comply with any of the documents demanded of the Debtor by Eastern, and as directed by the Court in the Order.

In response, Eastern advised this Court that since it was directed to participate with the Debtor in loss mitigation, Eastern has effectively been stonewalled by the Debtor, beginning with Eastern's reasonable requests for documentation – all of which have went ignored. Eastern further advised that the Debtor should not be permitted to continue to frustrate the spirit and purpose of loss mitigation by electing not to participate with Eastern in the loss mitigation process or comply with Orders of this Court pertaining to loss mitigation.

As a result of the foregoing, the Court directed that the Debtor provide Eastern with the missing documentation for review, and to the extent that the Debtor believes that she should not be required to provide any such documentation, to contact the offices of the undersigned and work toward a resolution over any such documentation. Although the undersigned attempted to contact counsel to the Debtor several times to discuss the outstanding documentation to be turned over, counsel to the Debtor failed and/or refused to return any phone calls.

In point of fact, the only written correspondence between counsel to the Debtor and Eastern since the April 12, 2018 hearing, was contained in an email wherein Debtor's counsel requested to know whether Eastern would consider assigning its mortgage loan to a new lender of the Debtor, assuming full payment on account of Eastern's debt. Notwithstanding, the Debtor has completely failed to provide any information requested of the Debtor or any information about any take-out lender the Debtor may have been speaking with.

The Debtor must not be permitted to continue to remain in loss mitigation when she clearly has no intention of working with Eastern towards any resolution thereof. Based upon the Debtor's counsel's comments (on April 12, 2018 - see above), and the Debtor's failing to engage with Eastern in any manner in connection with loss mitigation to date, it is clear that the Debtor's only interest in loss mitigation is to unreasonably stall and delay Eastern's ability to enforce its

state law rights. This cannot continue.

      In view of the fact that (a) the Debtor's default under the terms of the underlying mortgage loan relates back to January 2015,[4] (b) the Debtor's delay in providing responses requested by Eastern pursuant to, and in accordance with, the timeframes set forth in the Order are prejudicial to Eastern and should serve as grounds to terminate loss mitigation, Eastern respectfully requests that this Court enter an Order terminating the loss mitigation process as between Eastern and the Debtor.

      The next loss mitigation status conference is presently scheduled for July 17, 2018.

Dated: New York, New York
       July 16, 2018

                **KRISS & FEUERSTEIN LLP**

                *s/ Jason S. Leibowitz*
                Jerold C. Feuerstein, Esq.
                Jason S. Leibowitz, Esq.
                360 Lexington Avenue, Suite 1200
                New York, NY 10017
                (212) 661-2900
                (212) 661-9397
                jleibowitz@kandfllp.com

---

[4] In addition, and upon information and belief, no property taxes have been paid by the Debtor since May 2014.